HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

NIRMAL SINGH,

        Plaintiff,

    v.

MARILYN P. WILES[1], et al.,

        Defendants.

CASE NO. C07-1151RAJ

ORDER

## I.  INTRODUCTION

This matter comes before the court on Defendants' motion (Dkt. # 54) to dismiss this action for lack of subject matter jurisdiction, and Plaintiff's motion (Dkt. # 57) to compel supplementation of the administrative record and discovery.  Defendants requested oral argument on the motion to dismiss, but the court finds the purely legal question the motion raises suitable for disposition without oral argument.  For the reasons stated below, the court DENIES Defendants' motion to dismiss, and GRANTS in part and DENIES in part Plaintiff's motion to compel.

## II.  BACKGROUND

Plaintiff Nirmal Singh is a native of India who has resided lawfully in the United States since at least 1999, when he was granted asylum.  In February 2001, he filed an

---

[1] The court directs the clerk to substitute Marilyn Wiles, director of the Nebraska Service Center of United States Citizenship and Immigration Services, for Gerald Heinauer, her predecessor. Fed. R. Civ. P. 25(d).

ORDER – 1

1   application to adjust his immigration status to "lawful permanent resident."  United States

2   Citizenship and Immigration Services ("USCIS")[2] took no action on his application for

3   years.  In July 2007, Mr. Singh filed this suit to compel adjudication of his application.

4           Events at USCIS have caused Mr. Singh to amend his complaint twice.  In

5   October 2007, USCIS issued a notice of its intent to deny Mr. Singh's application based

6   on his alleged provision of material support in 1984 to an Indian group known as

7   Damdami Taksal.  According to the notice, USCIS deemed Damdami Taksal to be a

8   terrorist organization.  On February 20, 2008, with cross-motions for summary judgment

9   pending, USCIS denied Mr. Singh's application because of his support of Damdami

10  Taksal.  Mr. Singh agreed that this action mooted his request to compel adjudication of

11  his application, but he sought leave to amend his complaint to add a claim challenging the

12  denial of his application.  The court granted leave on May 21, 2008.  By that time, USCIS

13  had notified Mr. Singh that it had vacated the denial of his application.  It did so in

14  response to a March 26, 2008 top-level memorandum directing the reopening of all

15  immigrant petitions that USCIS had denied based on providing material aid to terrorist

16  organizations.  Dkt. # 34, Ex. A (Mar. 26, 2008 memo).  The memo explained that recent

17  statutory changes expanded the discretion of certain officials to grant waivers from some

18  terrorism-related admissibility bars.  The memo directed USCIS adjudicators to withhold

19  decisions on any applications that might benefit from a waiver, and to reopen any

20  applications adjudicated after December 2007.  All such applications were to be placed

21  on hold pending decisions from the Secretary of the Department of Homeland Security

22  ("DHS") regarding waivers.  Mr. Singh's application was placed on hold in accordance

23  with the memo.  In his first amended complaint, Mr. Singh challenged both the vacated

24  denial of his application and the decision to place his application on indefinite hold.

25

26  _____

27  [2] When Mr. Singh filed his I-485 application, USCIS was still known as Immigration and
    Naturalization Services ("INS") and was an agency of the Department of Justice.

28  ORDER – 2

Mr. Singh again moved for summary judgment, acknowledging that he could not challenge the vacated denial of his application, but again asking the court to compel adjudication of the application. The court denied that motion in December 2008, ruling that the delayed adjudication was not unreasonable in light of consideration of a waiver that might beneficially affect his application. At the same time, the court noted that the delay would become less reasonable with time, particularly if the USCIS offered no specific details about the timeline of a waiver decision. The court entered orders three times in 2009 permitting USCIS to delay adjudication pending a waiver decision. In July 2009, USCIS agreed to adjudicate Mr. Singh's application within 90 days. USCIS lived up to its agreement, denying Mr. Singh's application on October 2, 2009. Dkt. # 46, Ex. 1 (hereinafter "Denial Ltr."). It again cited Mr. Singh's alleged provision of material support to Damdami Taksal. Denial Ltr. at 3 ("[Y]ou are inadmissible . . . for having engaged in terrorist activities . . . due to your having given material support to Damdami Taksal by allowing some of its members to spend the night in your temple and to hide there from the police." The letter noted that neither the DHS Secretary nor the Secretary of State had adopted a waiver affecting Mr. Singh. *Id.* Mr. Singh thus moved to amend his complaint again, this time to challenge the denial of his application. The court granted leave to amend. His second amended complaint names as Defendants the DHS Secretary, the Director of USCIS, and the Director of the USCIS Nebraska Service Center from which the letter denying his adjustment application issued. Except where clarity demands, the court will refer to Defendants collectively as USCIS.

Now before the court is USCIS's motion to dismiss the second amended complaint for lack of subject matter jurisdiction. Mr. Singh moves the court to compel USCIS to supplement the administrative record and to provide him discovery.

ORDER – 3

### III.  ANALYSIS

**A.      Motion to Dismiss**

USCIS's motion to dismiss invokes the jurisdiction-stripping provision of 8 U.S.C. § 1182(d)(3)(B)(i).  The text of that provision makes little sense without a review of the statutory context in which it arises.  The court begins with that review.

Subsection 1182(a) describes numerous grounds for deeming an alien inadmissible to the United States.  Subsection 1182(a)(3) sets forth "[s]ecurity and related grounds" for inadmissibility.  Among other things, subsection (a)(3) makes inadmissible any alien who "has engaged in terrorist activity."  § 1182(a)(3)(B)(i)(I).  An alien "[e]ngage[s] in terrorist activity" if he "commit[s] an act that [he] knows, or reasonably should know, affords material support" to a terrorist organization.  § 1182(a)(3)(B)(iv) & 8 U.S.C. § 1182(a)(3)(B)(iv)(VI).  "Terrorist organization[s]" fall into two categories:  those officially designated as terrorist organizations, § 1182(a)(3)(B)(v)(I)-(II); and undesignated terrorist organizations, § 1182(a)(3)(B)(v)(III).  When USCIS denied Mr. Singh's application, it cited, among other things, its conclusion that Damdami Taksal was an "undesignated terrorist organization" to whom Mr. Singh provided "material support in 1984."  Denial Ltr. at 3.

The law permits either the Secretary of State or the DHS Secretary to grant waivers of certain terrorism-related grounds of inadmissibility.  Either Secretary may grant a waiver as to a particular alien, or she may grant a waiver as to a particular undesignated terrorist organization.  § 1182(d)(3)(B)(i).  The March 2008 memo that led USCIS to reopen Mr. Singh's application was issued because the DHS Secretary was considering implementing one or more such waivers.

The law also provides, however, that the decision to grant or not grant such a waiver is in the "Secretary's sole unreviewable discretion."  § 1182(d)(3)(B)(i) (West 2005).  That was the sole provision of the statute addressing judicial review until Congress amended the law in 2008.  In those amendments, Congress retained the

ORDER – 4

language committing waivers to the Secretary's sole unreviewable discretion, but it also added two more sentences to the same subsection. The third sentence provides that "Notwithstanding any other provision of law . . ., no court shall have jurisdiction to review such a determination or revocation except in a proceeding for review of a final order of removal . . . ." *Id.* USCIS contends that this provision strips the court of jurisdiction over this lawsuit.[3]

The most likely meaning of "determination" in the jurisdiction-stripping sentence of § 1182(d)(3)(B)(i), and the meaning Mr. Singh espouses, is the determination of the Secretary of State or DHS Secretary to grant a waiver to the terrorism-related grounds of

---

[3] For the sake of completeness, the court includes the full text of the relevant subsection of the statute:

> The Secretary of State, after consultation with the Attorney General and the Secretary of Homeland Security, or the Secretary of Homeland Security, after consultation with the Secretary of State and the Attorney General, may determine in such Secretary's sole unreviewable discretion that subsection (a)(3)(B) shall not apply with respect to an alien within the scope of that subsection or that subsection (a)(3)(B)(vi)(III) shall not apply to a group within the scope of that subsection, except that no such waiver may be extended to an alien who is within the scope of subsection (a)(3)(B)(i)(II), no such waiver may be extended to an alien who is a member or representative of, has voluntarily and knowingly engaged in or endorsed or espoused or persuaded others to endorse or espouse or support terrorist activity on behalf of, or has voluntarily and knowingly received military-type training from a terrorist organization that is described in subclause (I) or (II) of subsection (a)(3)(B)(vi), and no such waiver may be extended to a group that has engaged [in] terrorist activity against the United States or another democratic country or that has purposefully engaged in a pattern or practice of terrorist activity that is directed at civilians. Such a determination shall neither prejudice the ability of the United States Government to commence criminal or civil proceedings involving a beneficiary of such a determination or any other person, nor create any substantive or procedural right or benefit for a beneficiary of such a determination or any other person. Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title [28 USCS §§ 1361 and 1651], no court shall have jurisdiction to review such a determination or revocation except in a proceeding for review of a final order of removal pursuant to section 1252 of this title [8 USCS § 1252], and review shall be limited to the extent provided in section 1252(a)(2)(D) [8 USCS § 1252(a)(2)(D)]. The Secretary of State may not exercise the discretion provided in this clause with respect to an alien at any time during which the alien is the subject of pending removal proceedings under section 1229a of this title [8 USCS § 1229a].

8 U.S.C. § 1182(d)(3)(B)(i).

ORDER – 5

inadmissibility specified in § 1182(a)(3)(B).  The subsection in question strips courts of "jurisdiction to review *such a determination or revocation* except in a proceeding for review of a final order of removal . . . ." § 1182(d)(3)(B)(i) (emphasis added).  The phrase "such a determination or revocation" suggests that the referenced determination has its antecedent in the subsection itself.  The first sentence of § 1182(d)(3)(B)(i) permits either Secretary to "determine in such Secretary's sole unreviewable discretion that subsection (a)(3)(B) shall not apply with respect to an alien . . . or that subsection (a)(3)(B)(vi)(III)) shall not apply to a group . . . ."  This is the only instance in which § 1182(d)(3)(B)(i) uses the verb "determine" or a conjugate thereof.  All subsequent instances (there are three) use the nominalization "such determination."  Given the syntax, it is a stretch to construe "such determination" to refer to a determination other than the one stated at the outset of the subsection.  Two other district courts within the Ninth Circuit have reached the same conclusion.  *Ahmed v. Mayorkas*, No. C 08-1680MHP, 2009 U.S. Dist. LEXIS 126030, at *15 (N.D. Cal. Dec. 22, 2009); *Khan v. Scharfen*, C 08-1398 SC, 2009 U.S. Dist. LEXIS 28948, at *18 (N.D. Cal. Apr. 6, 2009).  So far as the court is aware, no court has ruled to the contrary.

USCIS insists that the "determination" to which the jurisdiction-stripping provision applies includes the determination that Mr. Singh is inadmissible as an alien who has engaged in terrorist activity.  The notion that "determination" in the jurisdiction-stripping provision might mean something other than the determination of whether to grant a terrorism-related inadmissibility waiver is not without support in the statute. § 1182(a)(3)(B) never uses a variation of the word "determine," casting doubt on USCIS's assertion that the "determination" of  § 1182(d)(3)(B)(i)'s jurisdiction-stripping provision refers to any application of subsection a(3)(B).  Nonetheless, § 1182(b)(1) uses a conjugate of "determine" to refer to the decision to deny an application for adjustment of status based on *any* of the grounds of inadmissibility in § 1182(a).  § 1182(b)(1) (setting notice requirements when "adjustment of status is denied by an immigration or

ORDER – 6

consular officer because the officer determines the alien to be inadmissible under subsection (a)").  In addition, the determination of whether to grant a terrorism-related exception is already committed to the "sole unreviewable discretion" of the named officials.  The later protection in the same subsection of that "determination" from judicial review is arguably surplusage.  It is arguably not surplusage, however, as the jurisdiction-stripping sentence expands judicial review by permitting review within the context of removal proceedings.[4]

Although neither Mr. Singh's interpretation nor USCIS's interpretation of the jurisdiction-stripping provision is without flaws, the court's obligation to construe any jurisdiction-stripping provision narrowly dictates that it must adopt the former interpretation.  There is a "strong presumption in favor of judicial review of agency action."  *I.N.S. v. St. Cyr*, 533 U.S. 289, 298 (2001).  Even where a statute plainly limits judicial review to some extent, the court must favor the "narrower construction of a jurisdiction-stripping provision" over a "broader one."  *ANA Int'l Inc. v. Way*, 393 F.3d 886, 891 (9th Cir. 2004).  In this case, the court adopts the narrower interpretation of the jurisdiction-stripping provision in question.  The court therefore holds that the only "determination" that § 1182(d)(3)(B)(i) makes unreviewable is the determination of either the Secretary of State or DHS Secretary to grant a waiver to terrorism-related grounds of inadmissibility.  Because Mr. Singh does not challenge such a determination, the court must deny USCIS's motion to dismiss.

The court's disposition today makes it unnecessary to consider USCIS's argument that § 1182(d)(3)(B)(i) permits Mr. Singh to challenge the determination that he is

---

[4] In a response to Mr. Singh's notice of new case authority after briefing on the instant motions had closed, USCIS attempted for the first time to cite relevant portions of the legislative history of the jurisdiction-stripping provision of § 1182(d)(3)(B)(i).  The court finds nothing persuasive in the scant references to the legislative history that USCIS provided.  The court also notes that USCIS used the same document to cite 8 U.S.C. § 1252(a)(2)(B)(i)-(ii) for the first time.  It is not clear whether USCIS asserts those subsections as bar to this court's jurisdiction.  If it does, it is obligated to do so in a proper motion.  This order makes no ruling as to the applicability of § 1252(a)(2)(B)(i)-(ii) in this case.

ORDER – 7

inadmissible in a removal proceeding.  Even if USCIS is correct, the existence of an alternate path to review does not affect the court's conclusion that § 1182(d)(3)(B)(i) is no bar to the instant lawsuit.  The court observes, however, that removal proceedings provide no obvious relief for Mr. Singh.  He is not currently in removal proceedings, and he no doubt prefers it this way.  Despite USCIS's determination that he is inadmissible, he remains a lawful resident of this country as an asylee.  He has been in the United States since 1999, and it would appear that USCIS does not deem his alleged provision of support to members of a terrorist organization more than 25 years ago to be a good reason to attempt to remove him from this country.  To do so, it would have to initiate proceedings to terminate his refugee status.  *See* 8 U.S.C. § 1158(c)(2).  In these circumstances, USCIS advocates a statutory interpretation that leaves Mr. Singh in immigration limbo.  He cannot, in USCIS's view, challenge the determination that he is inadmissible.  He thus must indefinitely bear, without recourse, the burdens that come with bare refugee status.  *See Ahmed*, 2009 U.S. Dist. LEXIS 126030, at *19-20 (contrasting limitations of refugee status with benefits of permanent resident status).  Although this may be the result USCIS prefers, it has not demonstrated that this is the result Congress intended.  *Id.* at *20-21 (noting lack of evidence that "Congress intended such a result, which creates a legal black hole").

**B.    Motion to Compel**

The court now turns to Mr. Singh's motion to compel supplementation of the administrative record or discovery.  USCIS filed the administrative record in three parts.  Dkt. # 7 (filed Nov. 2, 2007), Dkt. # 32 (filed Jul. 14, 2008), Dkt. # 53 (filed Dec. 22, 2009).  The court's review of that record leads it to assume that it is incomplete.  The most recent supplement, filed after USCIS's most recent denial of Mr. Singh's application, contains nothing except the October 2, 2009 denial letter.  The previous supplement ended with USCIS's April 2008 notice that it was reopening Mr. Singh's application.  The administrative record thus contains a seventeen-month gap.  At a

ORDER – 8

minimum, Mr. Singh submitted at least one document to USCIS for review during this period.  Moreover, the denial letter itself references a number of source documents that are not part of the record.[5]  It appears to the court that the administrative record is incomplete in the sense that it does not even contain all documents that would undisputedly be part of the administrative record.

Courts also have discretion to expand the administrative record in four narrow circumstances:  (1) where supplementation is necessary to determine if the agency considered all factors and adequately explained its decision, (2) where the agency has relied on documents not in the record, (3) where supplementation is necessary to explain complex terminology or subject matter within the record, and (4) where a plaintiff shows that the agency acted in bad faith.  *Lands Council v. Powell*, 395 F.3d 1019, 1029 (9th Cir. 2005).  Courts are to exercise their discretion to supplement the record sparingly, so as not to undermine the general rule that agency decisions are subject to limited review. *Id*.  Courts sometimes suggest that formal discovery procedures should be the vehicle for supplementing administrative record, and they sometimes suggest that supplementation of the administrative record is a process that does not require formal discovery.

Here, Mr. Singh raises two concerns.  First, as noted above, the record currently on file does not include all documents on which USCIS relied in denying Mr. Singh's application.  Second, Mr. Singh has presented evidence that at least one other alien with ties to Damdami Taksal was deemed admissible despite those ties.  With the exception of the top-level waiver authority discussed above, application of the terrorism-related grounds of inadmissibility at § 1182(a)(3) is not discretionary.  If USCIS has deemed some aliens with ties to Damdami Taksal admissible while deeming others inadmissible, it raises an inference of, at a minimum, arbitrary action, and possibly action taken in bad faith.

---

[5] USCIS apparently provided some of these source documents to Mr. Singh, but has not formally made them part of the administrative record.

ORDER – 9

1          At this point, the parties' disputes over the content of the administrative record and

2   the need to supplement that record are not sufficiently defined for the court to resolve

3   them.  It would appear that this is in part because USCIS has chosen to avoid those

4   disputes while awaiting the resolution of its challenge to the court's jurisdiction.  Mr.

5   Singh, meanwhile, has provided very little information revealing whether he has

6   attempted to resolve these disputes with USCIS.  There are no declarations from counsel

7   that indicate that any substantive discussions about supplementation of the administrative

8   record have occurred.  In addition, while Mr. Singh's motion seeks to compel discovery,

9   he has not actually propounded any discovery.  Putting that omission aside, the

10  "discovery" that he requests in his motion is, in several respects, not discovery at all.  For

11  example, there is no discovery procedure to compel a party to draft affidavits, yet several

12  of Mr. Singh's "discovery" requests would require USCIS to draft affidavits for him.

13         The court therefore orders the parties to meet and confer regarding the state of the

14  administrative record and the need to supplement the administrative record.  Mr. Singh's

15  counsel shall prepare for that conference by sending USCIS a letter explaining precisely

16  what documents he wants, and why he wants them.  He must be mindful of the

17  constraints that limit the scope of administrative record or extra-record documents that a

18  court may consider in a challenge to an agency's decision.  He must also be mindful of

19  the objections USCIS raised in response to his current motion to compel.  He must send

20  the letter so that counsel for USCIS receives it at least a week before the parties meet and

21  confer.  They shall meet and confer no later than June 4, 2010.  If the parties are unable to

22  resolve their disputes, Mr. Singh may file a motion to compel supplementation of the

23  administrative record no later than June 18, and note that motion in accordance with

24  Local Rules W.D. Wash CR 7(d)(3).  That motion shall contain evidence of the parties'

25  attempts to resolve this dispute.  To the extent that there are documents that no one

26  disputes should be made part of the record or a supplement to the record, USCIS shall

27  produce them as soon as possible.  If the parties can resolve their disputes without the

28  ORDER – 10

court's intervention, they shall file a statement indicating as much by June 18, along with a proposed schedule for resolving this action via dispositive motion or by other means.

The procedure above shall be used in lieu of formal discovery for the time being. To the extent that it appears that formal discovery would be necessary or helpful in this action, the court will consider opening discovery in connection with its resolution of any motion Mr. Singh files in accordance with the previous paragraph.

## IV.  CONCLUSION

For the reasons stated above, the court DENIES Defendants' motion to dismiss (Dkt. # 54) and GRANTS in part and DENIES in part Plaintiff's motion to compel (Dkt. # 57).  The parties shall follow the procedures stated in this order to resolve their disputes about the status of the administrative record and any supplement to that record.

DATED this 27th day of April, 2010.

The Honorable Richard A. Jones
United States District Judge

ORDER – 11